JOURNAL ENTRY and OPINION
Appellant Michael Smith appeals from the trial court's decision finding him guilty of one count of possession of drugs under R.C. 2925.11 and two counts of possessing criminal tools under R.C. 2923.24. Smith assigns the following as errors for our review:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF THE ESSENTIAL ELEMENTS OF THE OFFENSES.
 II. THE APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
On December 20, 2000, a Cuyahoga County Grand Jury indicted Smith and Clyde Richards on one count of possession of drugs under R.C. 2925.11, two counts of preparing drugs for sale under R.C. 2925.07,[1] and two counts of possessing criminal tools under R.C. 2923.24.[2] Smith and Richards pled not guilty to these charges, and joined as defendants prior to trial.
At trial, Terry Turner, the owner of U.S. Freightways, a package shipping company, received several calls from a man called Hakim in Los Angeles, California regarding the scheduled delivery of three crates recently received into U.S. Freightways' Middleburg Heights warehouse. The concern expressed by the repeated calls triggered Turner's suspicion that the packages may contain contraband, which prompted Turner to open one of the crates in accordance with Freightway's shipping contract. In the opened crate, Turner found what appeared to be a large quantity of marijuana. Turner promptly called the Middleburg Heights Police Department.
Before the police arrived, two men later identified as Smith and Richards, drove a black Mazda to the warehouse. Upon seeing the crates, Richards claimed ownership of them and sought to retrieve them. Turner attempted to stall Richards until the police arrived. He did not succeed in this, but Richards and Smith apparently tired of waiting, drove away without the crates.
Based upon a radio dispatcher's description, the responding officers stopped and searched the car, Richards and Smith; the search did not uncover any contraband. After taking Richards and Smith into custody, the police fingerprint identified Smith as "Kenneth Green," an alias.
While in custody, a piece of paper fell from Smith's possession. Smith stepped on it and refused to move. Eventually the police obtained the paper and discovered it to be a shipper's invoice for three crates from U.S. Freightways in Los Angeles, California.
After taking Smith and Richards into custody, the police secured the crates which were still at U.S. Freightways. Inside the crates, the officers found over forty-seven kilograms, or approximately 104 pounds, of marijuana. The shipping labels on the crates were addressed to: "A.B. Boadley, Inc., 19825 St. Clair Avenue, Cleveland, Ohio 44117." The police discovered that Comet Glass, not A.B. Boadley is located at this address. The contact number on the crates were assigned to a Dorothea Gamble residing at 1744 Coit Avenue, first floor, Cleveland, Ohio.
The police with the assistance of the United States Drug Enforcement Administration and U.S. Customs pursued the investigation at the Coit Avenue address where the officers met a resident named Shontel Gray. Gray refused admittance to the officers, who then secured a search warrant which they executed on October 13, 2000.
The combined testimony of the executing officers revealed the house smelled of marijuana; they also found in the house plastic baggies, bubble wrap, a digital scale, U.S. Freightways invoices, postal receipts, and Western Union money transfer orders. Two money orders were from Kenneth Green of Cleveland in amounts of $2,330. One of these money orders was claimable in Los Angeles and payable to Richards. Further, the police found a crate addressed to A.B. Boadley, 15925 Saranac Road, Cleveland, Ohio under the back porch. Based on the heavy and permanent nature of vegetative growth surrounding the porch, the crates were presumptively placed under the porch through a basement window.
The officers found trace amounts of marijuana in the house, but neither the home nor the crate found under the porch contained sufficient marijuana to indicate the house served as a distribution center. Nonetheless, each officer testifying at trial concluded that the evidentiary items led them to believe, based upon their training and experience, that the home was used as a "drop house;" in other words, a place where large quantities of marijuana are delivered in order to be processed into smaller quantities for distribution.
Through the course of their investigation, the police discovered five shipments from United Freightways in Los Angeles to A.B. Boadley. All shipments had contact numbers traced either to the Coit Road drop house or Smith's cell phone.
Predominantly based on the foregoing evidence, the jury convicted Smith and Richards of counts one and three, and Smith of count five. Smith, alone, now appeals his convictions claiming the evidence did not support that he ever possessed the marijuana in the crates.
In his first assigned error, Smith argues the trial court erred in denying his Crim.R. 29 motion for acquittal. We disagree.
A motion under Crim.R. 29 challenges the sufficiency of evidence presented against a defendant.[3] In reviewing a Crim.R. 29 motion, a court must view the evidence in a light most favorable to the prosecution and determine whether reasonable minds could differ as to whether each material element of the crime was proved beyond a reasonable doubt.[4]
The pivotal question under Smith's first assigned error is whether sufficient evidence existed at trial to support a finding that he possessed the marijuana. Possession may be either actual or constructive.[5] As no evidence exists to support actual possession, we focus on constructive possession which may be established via circumstantial evidence.[6] A showing that the offender was able to exercise dominion or control over the object is sufficient to establish constructive possession, even if the object is not within his immediate physical possession.[7]
Our opinion in this matter is, in part, influenced by the following cases. First, in United States v. Quesada[8] the United States Court of Appeals for the Tenth Circuit determined that the defendant constructively possessed cocaine based upon his possession of a UPS tracking number which permitted him to claim, and thus exercise dominion and control over, the original package even though police had confiscated the drugs before he picked up the package.[9] Second, in United States v. Lewis, et al,[10]
the sixth circuit determined the defendant constructively possessed crack cocaine based upon his calls to UPS to determine the arrival time of the shipment and to arrange for co-defendants to pick up the package, activities sufficient to demonstrate her dominion and control over the package, even though police had already confiscated the drugs.[11]
The evidence adduced at trial is sufficient to find that Smith constructively possessed the crates containing marijuana. The prosecution put forth evidence that Smith possessed the shipper's invoice for the three crates, was a contact on the crates' delivery labels, directed money orders to the location of the crates' origin, and drove with Richards to claim the crates. This evidence, viewed in a light most favorable to the prosecution, leads us to conclude that reasonable minds could only conclude that Smith exercised dominion and control over the marijuana contained in the crates. Accordingly, the trial court did not err in finding that Smith constructively possessed the marijuana in the crates, and Smith's first assigned error is without merit.
In his second assigned error, Smith argues the trial court erred in convicting him on all three counts because the convictions were counter to the manifest weight of evidence adduced at trial. We disagree.
When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[12] The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.[13] Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.[14]
Again, the pivotal question is whether Smith possessed the marijuana found in the crates; and again, constructive possession is adequate. Although different standards of review require us to treat Smith's assigned errors differently, our decision is based on the same evidence adduced at trial: Smith possessed a shipper's invoice for the crates of marijuana, was a contact on the crates' delivery labels, directed money orders to the location of the crates' origin, and drove with Richards to claim the crates. Based on this evidence and the balance of the record, we cannot say that the jury lost its way. The manifest weight of evidence adduced at trial supports the trial court's conclusion that Smith exercised dominion and control over, and thus possessed the crates. Accordingly, Smith's second assigned error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
[1] One of which contained a juvenile specification.
[2] One count in relation to an automobile, pagers, and cellular telephone; one count in relation to false identification, pieces of crates, lugs, luggage, and weighing scales.
[3] Crim.R. 29(A).
[4] State v. Evans (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042,1056, citing State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184.
[5] See State v. Scalf (1998), 126 Ohio App.3d 614, 619, 710 N.E.2d 1206,1210, appeal dismissed (1998), 82 Ohio St.3d 1431, 694 N.E.2d 981; Statev. Kobi (1997), 122 Ohio App.3d 160, 164, 701 N.E.2d 420, 430; State v.Mann (1993), 93 Ohio App.3d 301, 308, 638 N.E.2d 585, 589, appeal dismissed (1994), 70 Ohio St.3d 1412, 637 N.E.2d 9.
[6] State v. Price (Dec. 2, 1999), Cuyahoga App. No. 75445, unreported, citing State v. Jenks (1991), 61 Ohio St.3d 259, 272,574 N.E.2d 492, 502, rehearing denied (1991), 62 Ohio St.3d 1410,577 N.E.2d 362.
[7] State v. Dammons (Dec. 24, 1998), Cuyahoga App. No. 73873, unreported, citing State v. Wolery (1976), 46 Ohio St.2d 316, 332,348 N.E.2d 351, 361, certiorari denied Wolery v. Ohio (1976), 429 U.S. 932,97 S.Ct. 339, 50 L.Ed.2d 301.
[8] 1991 U.S. App. LEXIS 21273 (C.A. 10, Sept. 4, 1991), No. 90-2124, unreported.
[9] Id. 
[10] 1998 U.S. App. LEXIS 7957 (C.A. 6, April 21, 1998), No. 96-3797/96-3798/96-3955, unreported.
[11] Id. 
[12] State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717,720, citing Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. See, also, State v.Thomkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
[13] State v. Martin (1983), 20 Ohio App.3d 172,175,485 N.E.2d 717,720-721, citing Tibbs v. Florida (1982), 457 U.S. 31, 38,42. See, also, State v. Thomkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541.
[14] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.